[Sac. No. 285.   In Bank.—December 18, 1897.]

IDA F. LEE, Executrix, etc., Respondent, v. M. E. MURPHY et al., Appellants.

TRIAL—SUBMISSION OF CAUSE—AMENDMENT OF COMPLAINT—DISCRETION.—The power given under section 473 of the Code of Civil Procedure to allow amendments in the interest of justice, is in the discretion of the trial court; and the appellate court will not disturb the allowance of an amendment to the complaint made by the trial court, after the submission of the cause, where no abuse of discretion appears.

ID.—CONTINUATION OF TRIAL—FURTHER TESTIMONY OF PLAINTIFF—MOTION TO STRIKE OUT—OBJECTION TOO BROAD—DISCRETION.—Where the complaint was amended after the submission of the cause, and the trial was then continued for further hearing of evidence, a motion to strike out all further testimony given by the plaintiff in support of the amended complaint, as showing in contradiction of the affidavit for the amendment that the facts testified to were all previously known, is properly denied on account of the objection being too broad, where a portion of the testimony given tended to establish other and independent facts; and it was matter in the discretion of the court as to what further relevant testimony to allow.

FORECLOSURE OF MORTGAGE—EVIDENCE—MORTGAGE NOT PROPERLY RECORDED —GENERAL OBJECTION OF ADVERSE CLAIMANT—FAILURE TO EXCEPT— WAIVER.—In an action to foreclose a mortgage, which is not properly recorded, the mortgage is admissible in evidence as against the mortgagor; and it is incumbent upon one claiming adversely to the

mortgage, who objects to its admission in evidence, to point out specifically the ground of objection thereto; and where the objection interposed by the adverse claimant was a mere general objection to the mortgage as irrelevant, immaterial, and incompetent, without pointing out wherein it was such as against the objector, and no exception was taken to the ruling admitting the mortgage in evidence, all objection thereto by such adverse claimant is waived.

ID.—VOID ACKNOWLEDGMENT OF MORTGAGE—MORTGAGEE ACTING AS NOTARY —PRESUMPTION OF IDENTITY—RECORD NOT CONSTRUCTIVE NOTICE.—An acknowledgment of a mortgage made before a notary public bearing the same identical name with that of the mortgagee, and made in the county of the residence of both parties, must be presumed, from the identity of name, to have been taken before the mortgagee as a notary public, in the absence of proof to the contrary; and an acknowledgment so taken is void, and does not authorize any record of the mortgage, and the record thereof does not impart constructive notice to third parties of the rights of the mortgagee.

ID.—HOMESTEAD CLAIM BY WIFE OF MORTGAGOR—PRIORITY TO UNRECORDED MORTGAGE—ACTUAL NOTICE IMMATERIAL.—The rights of a homestead claimant are statutory, and are not subject to the application of the general principles of equity respecting actual notice to purchasers, nor is the homestead subject to forced sale under a mortgage, unless it was properly executed and recorded before the declaration of homestead was filed for record; and where the record of the mortgage was unauthorized and void, it must be treated as though not recorded, and a subsequent homestead claim filed by the wife of the mortgagor has validity and priority over the mortgage, notwithstanding she had actual notice of the mortgage.

ID.—MORTGAGE FOR PURCHASE MONEY—VENDOR'S LIEN—WAIVER—EXEMPTION OF HOMESTEAD.—Although the homestead is not exempt from forced sale as against a vendor's lien upon the homestead, yet where a mortgage is taken for the purchase money, the vendor's lien is thereby waived, and the homestead is exempt from execution, as against any mortgage upon the premises which was not recorded before the declaration of homestead was filed, notwithstanding such mortgage may have been given for the purchase money.

ID.—EQUITABLE LIEN FOR PURCHASE MONEY—MAXIM.—Under section 1241 of the Civil Code an equitable lien for purchase money, as distinguished from a vendor's lien, is not chargeable upon the homestead.

APPEAL from a judgment of the Superior Court of Sutter County and from an order denying a new trial. E. A. Davis, Judge.

The facts are stated in the opinion.

Martin Devine, and A. A. De Ligne, for Appellants.

W. T. Phipps, for Respondent.

CHIPMAN, C.—On March 11, 1892, the defendant, M. E. Murphy, executed a promissory note for fourteen hundred dollars to W. H. Lee, plaintiff's testator (and husband), and on the same day he executed a mortgage on the premises described in the complaint to said Lee, to secure the payment of said note. The mortgage was acknowledged by Murphy before Lee, the mortgagee, and the name of the mortgagee given in the mortgage and the name of the notary were identical.

The consideration of this note was money paid by said Lee to one A. K. Boutwell, at the request of said Murphy, as the purchase price of the land described in the mortgage. The deed was made direct from Boutwell to Murphy, and as a part of the transaction Murphy mortgaged the premises to Lee as security for the purchase price paid to Boutwell.

The deed bore the same date as the mortgage, and was recorded March 12, 1892, twenty-three minutes past nine o'clock A. M. The mortgage was recorded the same day seven minutes later.

On the twenty-fourth day of September, 1895, the defendant, Rachel Murphy, filed in the office of the county recorder of Sutter county a homestead on the mortgaged premises.

On the eighth day of November, 1895, plaintiff brought this action to foreclose said mortgage, making M. E. Murphy and his wife, Rachel, defendants. The cause was tried by the court, and judgment was rendered for plaintiff. The defendant, Rachel Murphy, appeals from the judgment, from the order denying defendant's motion to vacate and set aside the judgment, and for a new trial. The defense set up in the answer and relied on here is the homestead of defendant Rachel Murphy.

Considerable space is given in the record and in briefs of counsel as to the alleged error of the court in allowing plaintiff to amend her complaint after having gone to trial and submitted the case for decision. One of the amendments allowed was to the effect that the money loaned to Murphy was the purchase-money paid for the land mortgaged. Defendant moved to strike this amended complaint from the files and to vacate and set aside the order granting plaintiff leave to amend, which motion was denied and defendant excepted. The power given under section 473 of the Code of Civil Procedure to allow

amendments in the interest of justice is uniformly held to be within the discretion of the trial court, and it has been frequently held that this court will not disturb the action of the trial court, except where an abuse of that discretion is shown. It is unusual to find it necessary to amend the complaint after a case has been submitted, but I find no limitation as to the time before judgment entered when the power of the court ceases, and even after judgment it may be exercised for the relief of a party where the judgment results from mistake, inadvertence, surprise, or excusable neglect.

The plaintiff was called as a witness in her own behalf and testified at considerable length to several different relevant matters, at the conclusion of which defendant moved to strike out her entire testimony on the ground that in her affidavit, upon which permission was given to take further testimony in support of the amended complaint, she stated that she had discovered new facts, whereas her testimony showed she must have known these facts all the time. The motion was denied, and this is assigned as error. Her testimony was not confined entirely to facts of which she showed she had previous knowledge. The objection was too broad. Her testimony tended to establish other and independent facts. Besides, it was a matter largely in the discretion of the court as to what further relevant testimony to allow. The record shows that "it was agreed that this hearing should be considered a continuation of the trial of the case had on December 13, 1895."

When the mortgage was offered in evidence by plaintiff, defendant Rachel Murphy objected to it as irrelevant, immaterial, and incompetent. The objection was overruled, and this ruling is specified as error. It does not appear from the transcript that an exception was taken to the ruling. The mortgage was clearly admissible as to defendant M. E. Murphy, the mortgagor, and, being so, it was incumbent upon defendant in making this general objection to point out specifically wherein the evidence would be irrelevant, immaterial, or incompetent. (*Thompson v. Thornton*, 50 Cal. 142; *Brumley v. Flint*, 87 Cal. 471; *Crocker v. Carpenter*, 98 Cal. 418.) But the defendant did not except, and the objection must be deemed to have been waived. (*McCartney v. Fitz Henry*, 16 Cal. 184; *Turner v. Tuolumne etc. Co.*, 25 Cal.

397; *Keeran v. Griffith,* 34 Cal. 580; *Russell v. Dennison,* 45 Cal. 338.)

The mortgage, however, is before us, having been offered by plaintiff and admitted by the court, and the fact was also shown that the mortgagee, W. H. Lee, now deceased, was the notary before whom it was acknowledged. There is no evidence, however, that defendant Rachel Murphy knew that it was acknowledged before the mortgagee, except such as would be imparted by the identity of the name of the notary and the mortgagee, but there is evidence, and the court so found, tending to show that she had actual knowledge of the mortgage prior to filing her homestead.

This brings us to consider defendants' points: **1.** That the mortgage upon its face shows it was acknowledged by the mortgagee; **2.** That therefore the mortgage was not entitled to record, and is to be deemed not recorded; and **3.** That actual knowledge of the mortgage by appellant would not prevent her from filing a homestead that would have priority of the mortgage.

1. Does the identity of the name with that of the mortgagee raise the presumption of the identity of person?

Section 1963, subdivision 25, of the Code of Civil Procedure declares that certain presumptions are satisfactory, if uncontradicted, and, among them, "identity of person from identity of name."

In *Thompson v. Manrow,* 1 Cal. 428, defendant was sued in this state as John P. Manrow upon a judgment entered against John P. Manrow in the city of New York. There was no proof that they were the same persons. It was held that *prima facie* the defendant was the same person mentioned in the judgment. (See 1 Greenleaf on Evidence, sec. 575, note 3.)

In *Mott v. Smith,* 16 Cal. 534, it was held that the deed, from the identity of names, and by its reference to the source of title, contains sufficient *prima facie* evidence as to identity of person to admit it in evidence, and that before additional proof of such identity could be required, some circumstances must be shown to create doubts upon that point.

In *Carleton v. Townsend,* 28 Cal. 219, it was held that a deed offered in evidence to show the transmission of title from a for-

mer grantee, in which the name is identical with that of the grantee in the older deed, is *prima facie* evidence that the two persons are the same, even though the two deeds recite the resi-dence of the person to be at different places.

In *Douglas v. Dakin*, 46 Cal. 49, it was held, where William J. Douglas was plaintiff in an action for rent, and the defendant set up a judgment obtained in another court against William J. Douglas without averring identity, that the identity of the parties is to be presumed from the identity of names.

In *Stapleton v. Pease*, 2 Mont. 550, a declaratory statement re-lating to a mining claim was made, under oath, before William Peck, county recorder. It was contended that there was no proof that the William Peck who testified as to his signature was William Peck, the county recorder. The court said such proof was not necessary; that identity of names is *prima facie* evidence of identity of persons; that the burden of proof was upon appel-lants, if they disputed the identity of William Peck, the witness, and William Peck, the recorder, to establish the fact. In all ordinary cases the rule would be a perfectly safe one, and it would seldom happen that the party relying on nonidentity of the per-son could not easily prove the fact.

The mortgage was between two residents of the same county, was executed and acknowledged in that county, and the names on the face of the instrument were the same. I think this was *prima facie* evidence that the names related to one and the same person.

2. I am not aware of any statute law in this state prohibiting a notary from taking the acknowledgment of a conveyance of property in which he has an interest. We must, therefore, re-sort to the general law upon that subject, and it is uniform that no such thing can be legally done. Mr. Justice Temple said in *Merced Bank v. Rosenthal*, 99 Cal. 39: "Where the only effect of the acknowledgment is to impart notice by recording the deed, it would seem that to be void it must appear on the face of the instrument." We have seen that the identity of the name of the mortgagee and the notary in the case before us raised the presumption of identity of persons, and did, therefore, appear on the face of the mortgage. It was further said in the case last referred to: "It has been held that an acknowledgment before

the grantee of a deed is void." I have examined a great number of cases upon this point and find no disagreement. In *Wilson v. Traer*, 20 Iowa, 231, it was said: "It might, with some show of reason, be claimed that, since the acknowledgment is regular in form, and identity of the grantee with the officers taking it being always a matter to be shown *aliunde*, . . . . the better rule would be to hold the record regular and imparting notice, and leave to third parties the right to avoid both the record and instrument by showing fraud in fact, if any existed. But a more critical examination of the question will show that such a rule would leave a broad door open to the perpetration of frauds, and tend greatly to unsettle the verity of our public records and defeat the purposes of our registration laws. It is always within the power of parties to secure a disinterested officer to take an acknowledgment, and it is certainly no hardship to require them to do so. There is no reason why the fundamental rule, which prohibits a person from being a judge in his own case, or an executive officer in his own behalf, should not apply to this class of executive, semijudicial duties. To hold that a party beneficially interested in an instrument is incapable of taking or certifying an acknowledgment of it, cannot work any possible injury to anyone, while it will keep closed a door of temptation, at least, to fraud and oppression."

And it was held that "the acknowledgment was void and did not authorize the record of the instrument, and, as a consequence, such record did not impart any notice to third persons of the mortgagee's right under it, but, as between the parties to it, the mortgage is in full force and of binding efficacy." To like effect are *Brown v. Moore*, 38 Tex. 645; *Groesbeck v. Seeley*, 13 Mich. 329; *Stevens v. Hampton*, 46 Mo. 404; *Wasson v. Connor*, 54 Miss. 351; *Davis v. Beazley*, 75 Va. 491; *Bowden v. Parrish*, 86 Va. 67; 19 Am. St. Rep. 873; *Withers v. Baird*, 7 Watts, 227; 32 Am. Dec. 754. See, also, Devlin on Deeds, secs. 476, 477; Proffatt on Notaries, 2d ed., secs. 42, 43; Webb on Record of Title, sec. 67.)

If these decisions lead to a right conclusion, and I think they do, the record of the mortgage imparted no knowledge or notice to defendant, and the acknowledgment was void.

Plaintiff suggests that there was a literal compliance with the

statute because the mortgage was executed and was recorded, and that, as the object of the record is to impart notice, it is immaterial if the acknowledgment was void, for appellant had actual notice of the mortgage. But without a valid acknowledgment it. was not entitled to be recorded, and, as we have seen, must be treated as though not recorded. Something more than notice is required, as we shall see later on.

3. We have, then, as to appellant, an unrecorded mortgage, executed prior to her homestead, of which she had actual notice. It is a mortgage, too, given to secure the purchase money paid for the land claimed by her under the homestead. Is she bound by this mortgage? By section 1217 of the Civil Code, it is provided that "an unrecorded instrument is valid as between the parties thereto and those who have notice thereof."

Under this section an unrecorded instrument is good as against a subsequent purchaser or mortgagee having actual notice of the unrecorded instrument. A mortgage is an instrument, and, if no statute stood in the way, I can see no reason why it would not be valid as against a homestead filed by a person having notice of the mortgage.

But section 1241 of the same code is invoked to show that homesteads are not controlled by section 1217. The section reads: "The homestead is subject to execution or forced sale in satisfaction of judgments obtained; . . . . 4. On debts secured by mortgages upon the premises, executed and recorded before the declaration of homestead was filed for record."

Two cases are cited to support appellant's contention: *Ontario Bank v. Gerry*, 91 Cal. 94; and *First Nat. Bank v. Bruce*, 94 Cal. 77. In neither one of these cases had there been any record made of the mortgage or lien, or attempted to be made. In both cases it was found as a fact that the wife had no actual notice of the mortgage, nor was the question of the purchase price of the land raised. It is not to be overlooked, however, that the language of the court points strongly to the conclusion that even actual knowledge by the wife of a previous unrecorded mortgage by the husband would not shut off her right to declare a homestead. Mr. Justice McFarland in *Ontario Bank v. Gerry*, *supra*, said: "But the doctrine that unrecorded deeds and mortgages are good, except as against subsequent purchasers

for a valuable consideration, does not apply to homesteads. Rights
to homesteads are defined by the provisions of the code which di-
rectly deal with that subject. 'The doctrine bearing upon con-
veyances made to hinder, delay, or defraud creditors has no ap-
plication to the creation of a homestead,' and a declaration of a
homestead is not a 'conveyance' as that word is used generally
in the code. Section 1241 of the Civil Code enumerates the cases
where a homestead may be taken for a debt, and it can be so
taken in no other instance. The only subdivision of that sec-
tion upon which respondent could rest with any plausibility is
the fourth, which is as follows: 'On debts secured by mort-
gages on the premises, executed and recorded before the dec-
laration was filed for record.' It makes no difference that the
mortgage (if it was a mortgage on the land) in the case at bar
was executed by the husband before the legal title vested in
the wife; the mortgage was not recorded 'before the declaration
of homestead was filed,' and therefore cannot be enforced against
the wife's claim of homestead."

By section 1241 of the Civil Code, the homestead is subject to
forced sale in satisfaction of judgment obtained on vendor's liens
upon the premises. The complaint sets out the facts creating
what may be claimed to be a vendor's lien, or lien for the pur-
chase money.

The homestead act of April 21, 1851 (Stats. 1851, p. 296), de-
scribed this lien as a "vendor's lien." The act of March 13, 1860
(Stats. 1860, p. 87), described it as a "lien for purchase money."
The act of May 12, 1862 (Stats. 1862, p. 519), described it as a
"vendor's lien," and it has continued to be described ever since
as a "vendor's lien." Does a vendor's lien exist here?

Our statute reads as follows: "One who sells real property has
a vendor's lien thereon, independent of possession, for so much
of the price as remains unpaid and unsecured otherwise than by
the personal obligation of the buyer." (Civ. Code, sec. 3046.)

The vendor's lien, if any existed, was waived by the giving of
the mortgage. (Overton on Liens, 672-75; Jones on Liens, sec.
1073, et seq.) The purchase money was not "unsecured otherwise
than by the personal obligations of the buyer."

Respondent also claims a lien for the purchase money superior
to the homestead. There is an equitable lien of this character

enforceable in a proper case and in respect of this lien the doctrine of waiver seems not to be the same as in the case of vendor's lien. But section 1241 of the Civil Code does not include the purchase money mortgage or lien among the exceptions. The only mortgage there mentioned is one executed and recorded, and, among the liens enumerated, the purchase money lien is not mentioned. It was included in the act of 1860, *supra,* but was dropped out and the vendor's lien substituted in the act of 1862, *supra,* and is now a vendor's lien. These two liens have some features in common, but are not identical. The vendor's lien mentioned in section 1241, *supra,* is the same lien mentioned in section 3046, *supra.* If the legislature had intended to include both in the exceptions, it would have done so in terms. *Inclusio unius est exclusio alterius.*

I think it is settled law in this state that the homestead can be made subject to execution and forced sale, in satisfaction of judgments obtained, in no other instances than those pointed out in section 1241 of the Civil Code. In *Richards v. Shear,* 70 Cal. 187, it was undertaken to enforce a materialman's lien for materials furnished in the erection of a building upon the homestead premises. The right was denied, and the court said: "Where the legislature has undertaken to deal with the subject, and has declared from what the homestead shall be exempt, and with what it shall be charged, it only remains for the courts to give effect to its provisions. Admittedly, the language of the section of the code specifying in what instances the homestead shall be subject to execution and forced sale does not include the liens of materialmen."

This case was decided in July, 1886, and on March 9, 1887, the legislature amended the act to include "contractors, subcontractors, artisans, architects, builders, laborers of every class, and materialmen."

The same question came up again in *Walsh v. McMenomy,* 74 Cal. 356, where an attempt was made to foreclose a mechanic's lien in favor of a materialman and for labor performed. The transactions took place before March 9, 1887. Plaintiff furnished material and performed work under a contract with the husband, of which the wife had knowledge and to which she consented, and at a time when no homestead right had attached; the

homestead was filed after the material was furnished and the work performed. It was here again held that the homestead could only be sold under execution or forced sale in the excepted cases mentioned in the Civil Code, and this notwithstanding the provisions of the mechanics' lien law giving a lien in just such a case.

Article XVII, section 1, of our state constitution provides as follows: "The legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families." Here is the direct mandate of the people acting in their sovereign capacity requiring the legislature to protect the homestead from forced sale. Of what the homestead shall consist, and how it shall be protected from forced sale, are matters left with the legislature to determine. The courts have no power to increase or diminish the homestead, nor to say when it shall or shall not be subject to forced sale. The legislature has from time to time so amended the law as to make the homestead subject to certain liens not previously protected; if the case of an unrecorded mortgage of which the husband or wife has actual notice is to be added to the exceptions, or if a lien for the purchase money is to be included with that of the vendor, it must be done by the legislature and not by the courts.

I confess to having reached this conclusion with great reluctance in this particular case, for natural justice would seem to demand that defendants should pay the purchase price of their home before being permitted to take shelter under the homestead law; but the courts are powerless to afford any relief. Besides, it must be admitted that plaintiff's testator was not wholly blameless. As a notary public he ought to have known that he could not legally certify to the acknowledgment of a deed conveying or mortgaging land to himself.

I have not overlooked the equitable considerations so persuasive in this case and so ably presented by counsel for respondent, but they all proceed from the assumption that the case is one for the application of general principles of equitable cognizance, whereas it is hedged in and controlled entirely by legislative enactment.

It is recommended that the judgment and the order denying a new trial be reversed, and that in any subsequent proceedings

the homestead rights of appellant be given priority to plaintiff's mortgage.

Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment and the order denying a new trial are reversed, and in subsequent proceedings the homestead right of appellant be given priority to plaintiff's mortgage.

McFarland, J.,        Garoutte, J.,        Harrison, J.

Temple, J.,        Henshaw, J.

Rehearing denied.

Upon the denial of the application for a rehearing the following opinion was filed on the 18th of January, 1898:

BEATTY, C. J.—Confessedly, this is a hard case. The defendant, upon a technical objection to the record of a mortgage, defeats a just claim. Plaintiff therefore urges in her petition for a rehearing that the court should have noticed and sustained her technical objection to the sufficiency of the answer to raise an issue as to the recording of the mortgage. It may be that the denial in the answer is insufficient in this particular, but the findings of the superior court, and the statement of the case, show that the trial was conducted upon the theory that the recording of the mortgage was in issue; and, as we have frequently held, it is too late to raise such an objection for the first time in this court. The objection to the statement upon the ground that it contains no specifications of particulars in which the findings are unsupported by the evidence is immaterial, even if well founded, because the findings of the court establish that the mortgage was not recorded. A rehearing must be denied.